UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS REID, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES, INC.<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Thomas Reid ("Plaintiff") brings this Class Action Complaint against Defendants Amazon.com, Inc. and Amazon.com Services, Inc. (together, "Amazon") based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

**I. INTRODUCTION**

1. Plaintiff brings this Class Action Complaint on behalf of customers harmed as a result of Amazon's surreptitious collection, use, and storage of Plaintiff's and the proposed Class's highly sensitive biometric data.

2. Amazon is a world leader in e-commerce, cloud computing, digital streaming, and artificial intelligence. Indeed, it ranks among the Big Five companies in the U.S. information technology industry.

3. Amazon is one of the largest companies in the world, with net sales of over $386 billion in 2020. As an e-commerce company, Amazon's main sources of revenue are retail sales, third-party seller services, subscription services, and Amazon Web Services ("AWS")

1

arrangements that include "global sales of compute, storage, database and other services." According to some reports, an astounding 42% of the internet is powered by AWS, more than double that of Microsoft, Google, and IBM combined.

4. Amazon also develops certain technology products, including Alexa, Amazon's "cloud-based voice service available on hundreds of millions of devices from Amazon and third-party device manufacturers." Amazon further describes Alexa as its "voice AI," which "lives in the cloud and is happy to help anywhere there's internet access and a device that can connect to Alexa." Alexa "listens" to verbal communications and responds to those communications in a simulated voice.

5. The inception of Alexa began with Amazon Lab126 designing and engineering the Echo "smart speaker" in 2010. Amazon went on to launch the Echo "smart speaker" with the Alexa voice assistant in November 2014.

6. Amazon's use of the Alexa smart-speaker technology is not limited to one line of devices, and now encompasses a range of Amazon products including Echo Dot, Echo Plus, Echo Sub, Echo Show, Echo Input, Echo Frames eyeglasses, Amazon Fire TV, and Amazon Fire tablets. Additionally, Amazon allows third-party manufacturers of devices, such as thermostats, computers, and security cameras, to offer Alexa integration, and also allows third-party manufacturers to offer devices with Alexa capability already built-in (collectively, "Alexa Devices" or "Alexa Device"). In the short span of four years, Amazon has reportedly sold more than 100 million Alexa Devices.

7. In order to use an Alexa Device, a person needs an internet connection and the Alexa mobile application (the "Alexa App") installed on a smartphone or tablet.

8. To first use the Alexa App, an individual must have an account with Amazon. The

individual must then follow the set-up process on the Alexa Device, which indicates that users must pair the Alexa Device with the Alexa App. After the person has paired the Alexa Device to the Alexa App, the Alexa Device is ready for use by anyone, including people who do not have an account with Amazon, have not set up the Alexa Device, or do not have an Alexa App.

9. Unbeknownst to users, Amazon uses voice recognition technology to surreptitiously collect, use, and store voiceprints of its users to identify them. Amazon stores the biometric information of users in its database located in the cloud. Amazon does not disclose its biometric data collection to its users, nor does it ask users to acknowledge, let alone consent to, these practices.

10. Worse, instead of disclosing its practice of collecting biometric identifiers in the form of voiceprints, Amazon intentionally deceives users by telling them that what Amazon collects is a voice input without explaining the underlying technology and that it collects the users' biometric data. *See* Amazon Services Terms of Use (Amazon "we process your ***voice input*** and other information (such as location) in the cloud to respond to your requests and to improve your experience and our services."); *see also* Amazon.com Privacy Notice ("we use your ***voice input***, images, videos, and other personal information to respond to your requests, provide the requested service to you, and improve our services.")

11. The Alexa Terms of Use mirror the same disingenuous wordsmithing: "You control Alexa with your voice. Alexa records and sends audio to the cloud when you interact with Alexa. Amazon processes and retains your Alexa Interactions, such as your ***voice inputs***, music playlists, and your Alexa to-do and shopping lists, in the cloud to provide, personalize, and improve our services."

12. Through these practices, Amazon not only disregards the users' privacy rights; it

also violates the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), which was specifically designed to protect Illinois residents from practices like Amazon's. In particular, Amazon violated (and continues to violate) BIPA because it does not:

- Properly inform Plaintiff or the Class in writing that their biometric identifiers (voiceprints) were being generated, collected, stored and used;

- Properly inform Plaintiff or the Class in writing of the specific purpose and length of time for which their biometric identifiers were being collected, stored, and used;

- Provide and follow a publicly available retention schedule and guidelines for permanently destroying the biometric identifiers of Plaintiff and the Class; and

- Receive a written release from Plaintiff or the Class to collect, capture, or otherwise obtain their biometric identifiers.

13. Accordingly, this Complaint seeks an order (i) declaring that Amazon's conduct violates BIPA; (ii) requiring Amazon to cease the unlawful activities discussed herein; and (iii) awarding statutory damages to Plaintiff and the proposed Class.

## II. PARTIES

14. Plaintiff Thomas Reid is a natural person and a citizen of Cook County, Illinois.

15. Plaintiff has owned an Alexa Device since at least 2017. Since then, Plaintiff has on dozens of occasions communicated with his Alexa Device using his voice.

16. Each time Plaintiff spoke into his Alexa Device, Amazon collected, captured, received through trade, or otherwise obtained and disclosed Plaintiff's voiceprint and transcription thereof.

17. Amazon did not obtain written releases from Plaintiff before capturing, collecting, receiving through trade, or otherwise obtaining his biometric identifiers or biometric information in compliance with 740 ILCS 14/15(b)(3).

18. Plaintiff's voiceprints are "biometric identifiers" pursuant to 740 ILCS 14/10.

19. Transcripts of Plaintiff's voice recordings, which are derived from biometric identifiers, are "biometric information" pursuant to 740 ILCS 14/10.

20. Any other data in Amazon's possession that links Plaintiff's voiceprints to Plaintiff also constitutes "biometric information" pursuant to 740 ILCS 14/10.

21. As set forth herein, Amazon obtained the biometric identifiers and/or biometric information of Plaintiff and the Class in violation of BIPA.

22. Defendant Amazon.com, Inc. is a Delaware corporation with its headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington.

23. Defendant Amazon.com Services, Inc. is a Delaware corporation with its headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington.

24. Amazon.com, Inc. and Amazon.com Services, Inc. conduct business throughout the State of Illinois and the United States.

## II. JURISDICTION AND VENUE

25. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative members of the Class defined below, and a significant portion of putative Class members are citizens of a state different from at least one Defendant.

26. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy in this case exceeds $75,000 and this action is between citizens of different states. Plaintiff is a resident of Illinois, whereas Defendants are Delaware corporations with principal places of business in Washington.

27. This Court has personal jurisdiction over Defendants because each of them

regularly conduct business in Illinois and a substantial part of the harm, events, and conduct giving rise to Plaintiff's claims occurred in Illinois.

28. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), (c), and (d) because Amazon transacts business in this District and a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

### III. THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

29. BIPA was enacted in 2008 following the growing use of biometric data in business and security screening sectors. BIPA was specifically designed to protect members of the public by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

30. Under BIPA, companies may not collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier unless it first:

    a.    informs the subject . . . in writing that a biometric identifier . . . is being collected or stored;

    b.    informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier . . . is being collected, stored, and used; and

    c.    receives a written release executed by the subject of the biometric identifier.

740 ILCS 14/15(b).

31. The statute defines "biometric identifier" to include "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

32. The statute defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

33. BIPA also regulates how companies must handle Illinois consumers' biometric

6

data. *See*, *e.g.*, 740 ILCS 14/15(c)–(d). For instance, BIPA prohibits selling, leasing, trading, or otherwise profiting from a person's biometric data (740 ILCS 14/15(c)) and requires that companies develop a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric data when the initial purpose for collecting such data has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. It also requires companies to comply with the established retention schedule and destruction guidelines. 740 ILCS 14/15(a).

34. Under BIPA, "[a] prevailing party may recover for each violation: (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater; (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and (4) other relief, including an injunction, as the State or federal court may deem appropriate." *Id*.

### IV. AMAZON VIOLATES THE PRIVACY OF ILLINOIS RESIDENTS

35. Alexa Devices are designed to record and respond to communications immediately after an individual says a wake word (usually "Alexa" or "Echo"). If the wake word is recognized, the Alexa Device records the ensuing communication and then transmits the recording to Amazon's servers for interpretation and processing before receiving the relevant data in response.

36. However, oftentimes, the Alexa Device will record, monitor, or intercept communications even without the intentional use of a wake word. Indeed, reports have stated that it is extremely common for Alexa to activate, begin recording, and then upload the eavesdropped audio to the cloud, even when no wake word was used. According to a report by Bloomberg, there

are at least 100 transcripts of conversations uploaded to the cloud each day that Alexa Devices have recorded without purposely being activated.

37. From these recordings and transcripts, Amazon uses voice recognition technology to generate, collect, and store voiceprints of its users (and non-users). Once in its system, Amazon can compare a voiceprint to voiceprints within its database to confirm the identity of the user.

38. The Alexa Voice Service utilizes Automatic Speech Recognition technology (ASR), whereby computers detect patterns in audio waveforms of the voiceprint, match them with the sounds in a given language, and ultimately identify the words spoken. This is the first step required for Alexa to respond to a request.

39. The ASR technology analyzes various features of the user's voiceprint, such as the micro pauses the speaker takes between words, the frequency, and the speaker's pitch, in order to convert the voiceprint into a transcribed text string. After the ASR analyzes and transcribes the voiceprint, the Alexa Voice Service interprets the text using Natural Language Understanding ("NLU"), a process that allows Alexa to deduce what a speaker intends, rather than just the words they say.

40. According to Amazon, NLU works by using prior users' input: "With NLU, Alexa devices like Amazon Echo can apply learnings from historical interactions, across thousands of diverse applications, to understand that 'is it raining outside' and 'is it going to rain' are essentially the same question."

41. After the NLU has determined what the user wants, the Alexa Voice Service compares the transcribed communication to expected commands and, if it finds a match, it follows a set of instructions to retrieve the appropriate information from a designated data source to provide a response to the user in the form of a simple speech markup language ("SSML") which informs

Alexa how to respond.

42. If the NLU does not find a match, it looks for an alternative of what to do based on what information it has.

43. Alexa's response system then takes the SSML that was produced, uses a text-to-speech system to generate an audio speech file, and streams the audio to the user's device.

44. After Alexa has responded to a user's request, Amazon ***does not delete*** the voiceprint or the transcription created by that request. Instead, Amazon captures, collects, and indefinitely retains the voiceprint on its servers for continued use and analysis to, inter alia, improve its speech and voice recognition capabilities.

45. All voiceprints from the Amazon customer are associated with the customer's Amazon account. This means that, in addition to it being associated with a user, the voiceprint is stored along with the user's order and search history, giving Amazon the capability to utilize these voice recordings to create targeted advertisements, as seen in their patents.

46. Indeed, Amazon filed a "Keyword Determinations From Conversational Data" patent on June 12, 2017, which was approved and published by the United States Patent and Trademark Office on August 6, 2019. In it, Amazon demonstrates that it has the capability to utilize voice recordings to effectuate targeted advertisements based off the content of voice recordings:

    a. "FIG. 5 illustrates an example interface including advertising and shopping suggestions using keywords obtained from voice content in accordance with at least one embodiment";

    b. "Keywords associated with the user can be used for any appropriate purpose, such as for recommending advertising, product information, or other such content to the user";

    c. "Using any appropriate selection mechanism known or used in the art, an advertising entity can obtain keyword data for the user as extracted in FIG. 4 and

use that information to select an ad to display to the user." (where FIG. 4 indicates that the technology would first "receive voice stream," then "sniff audio stream for trigger word(s)," then "capture adjacent audio" if the trigger word is identified, then "analyze adjacent audio for keyword(s)," then "store keyword data associated with user," then "transmit keyword data to content provider.")

*See* U.S. Patent No. 10,373,620

47. The "Keyword Determinations from Conversational Data" patent further makes clear that Amazon's technology can create targeted advertisements for non-registered users, such that "[k]eywords associated with the verified user and with the identified *other person* are displayed" and thereby "the voice data can be analyzed for *both people*." *Id.* (emphasis added). For example, "it can be seen that some of the keywords associated with Laura have additional data indicating that these keywords are associated with Laura's kids, and not necessarily with Laura herself." *Id.*

48. On August 2, 2019, Amazon filed a continuation of U.S. Patent No. 10,373,620, which was approved and published by the United States Patent and Trademark Office on June 23, 2020. *See* U.S. Patent No. 10,692,506.

49. U.S. Patent No. 10,692,506 indicates the same or substantially similar language of U.S. Patent No. 10,373,620 (filed June 12, 2017), demonstrating that Amazon has had this technological capability for years and intends to continue to utilize and develop it for purposes of advertising.

50. Unsurprisingly, in addition to not disclosing its collection of voiceprints, Amazon never discloses to users that it will use and analyze users' voiceprints for the express purpose of delivering targeted advertisements. Because Amazon never discloses this practice, users, like Plaintiff and Class members, had no way of providing consent.

51. Further, Amazon does not allow a user to stop it from collecting voiceprints. The only way to stop Amazon's collection of voiceprints is to mute the microphone or deactivate the

10

device, both of which completely defeat the functionality of Alexa.

52. Amazon's practice of collecting and storing voiceprints violates the Illinois BIPA 740 ILCS 14/*et seq.*, which prohibits the collection, retention, capture, or purchase of biometric identifiers or biometric information without a written release from the individual. BIPA also requires a private entity in possession of biometric identifiers or biometric information to develop a retention schedule and guidelines setting forth the purpose for collecting biometric information and identifying a date upon which the biometric data will be destroyed. 740 ILCS 14/15(a).

53. Amazon violates BIPA multiple ways including, but not limited to:

a. Amazon generates, collects, stores, and utilizes the voiceprints and transcriptions of its users without receiving executed written releases from the users of Alexa-enabled products.

b. Amazon does not have a written policy available on its website "establishing a retention schedule and guidelines for permanently destroying biometric data when the initial purpose for collecting such data has been satisfied, or within 3 years of the individual's last interaction with the private entity, whichever occurs first."

54. Under BIPA, no private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and*

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740CS 14/15(b) (emphasis added).

55. BIPA claims brought under sections 740 ILCS 14/15 (a), (b), and (e) are subject

to a five-year statute of limitations period. Thus, Plaintiff's claims are not time-barred. *Tims v. BlackHorse Carriers, Inc.*, No. 1-20-0563, 2021 Il. App. (1st) 200563, 2021 WL 4243310 (Sept. 17, 2021).

V.   **CLASS ACTION ALLEGATIONS**

56.   Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following Class of Persons:

> All US citizens who live in Illinois and who, from the date five years prior to the date of the filing of this action to the date of the Class's certification of this action, (1) was a registered Amazon Alexa user, and (2) spoke in the vicinity of an Alexa device and was recorded by the Alexa device while living in Illinois.

57.   Excluded from the Class are Defendants and their subsidiaries and affiliates; all employees of Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Nationwide Class; Plaintiff's counsel and Defendants' counsel and members of their immediate families; government entities; and any judge to whom this case is assigned, including his/her immediate family and court staff.

58.   Certification of Plaintiff's claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Plaintiffs can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

59.   **Numerosity:** All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are likely tens of thousands, if not millions, of members of the Class, the precise number of Class members is unknown to Plaintiff. Class members may be identified through objective means, including Defendants' own records. Class members may be notified of the pendency of this action by

recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

60. **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a. Whether Amazon collected, captured, received, or otherwise obtained Plaintiff's and the Class's biometric identifiers;

   b. Whether Amazon properly informed Plaintiff and the Class that it collected, used, and stored their biometric identifiers;

   c. Whether Amazon properly informed Plaintiff and the Class of the specific purposes for which it collected, used, and stored their biometric identifiers;

   d. Whether Amazon obtained a written release (as defined in 740 ILCS 14/10) from Plaintiff and the Class to collect, capture, or otherwise obtain their biometric identifiers;

   e. Whether Amazon has sold, leased, traded, or otherwise profited from Plaintiff's and the Class members' biometric identifiers;

   f. Whether Amazon had and made available to the public, a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers in compliance with the BIPA; and

   g. Whether Defendants' violations of BIPA were committed intentionally, recklessly, or negligently.

61. **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of all Class members because Plaintiff, like other Class members, had his biometric identifiers collected, analyzed, stored and otherwise used by Defendants without his consent.

62. **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate Class representative because he is a member of the Class and his interest do not conflict with the interests of other Class members that he seeks to represent. Plaintiff

is committed to pursuing this matter for the Class with the Class's collective best interest in mind. Plaintiff has retained counsel competent and experienced in complex class action litigation of this type and Plaintiff intends to prosecute this action vigorously. Plaintiff, and his counsel, will fairly and adequately protect the Class's interests.

63. **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

64. **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendants have acted, or refused to act, on grounds generally applicable to the Class such that final declaratory or injunctive relief is appropriate.

65. Plaintiff reserves the right to revise the foregoing class allegations and definition based on facts learned and legal developments following additional investigation, discovery, or

otherwise.

### III. TOLLING, CONCEALMENT, AND ESTOPPEL

66. The applicable statutes of limitation have been tolled as a result of Amazon's knowing and active concealment and denial of the facts alleged herein, namely its practice of recording, collecting, using, and permanently storing individuals' voiceprint without their consent and written release.

67. Plaintiff and Class Members could not, with due diligence, have discovered the full scope of Amazon's conduct, due in no small part to Amazon's efforts to conceal such conduct. All applicable statutes of limitation also have been tolled by operation of the discovery rule. Under the circumstances, Amazon was under a duty to disclose the nature, significance, and purpose of their practice of recording, collecting, using, and permanently storing Plaintiff's and Class members' voiceprints, but did not do so. Defendants are therefore estopped from relying on any statute of limitations.

68. Amazon's fraudulent concealment and omissions are common to Plaintiff and all Class members.

69. Illinois' BIPA provides a private right of action such that any "person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in a federal district court against an offending party." 740 ILCS 14/20.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of 740 ILCS 14/15(b)**
**(On Behalf of Plaintiff and the Class)**

70. Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

71. The Illinois Legislature instituted BIPA on a finding that the "full ramifications of biometric technology are not fully known" and that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5.

72. BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive, receive through trade, or otherwise obtain a person's or a customer's biometric identifier . . . unless it first: (1) informs the subject . . . in writing that a biometric identifier . . . is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier . . . is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier." 740 ILCS 14/15(b).

73. Defendants are Delaware corporations and thus qualify as "private entit[ies]" under BIPA. *See* 740 ILCS 14/10.

74. Plaintiff's and the Class's voiceprints are "biometric identifiers" pursuant to 740 ILCS 14/10.

75. Amazon systematically and automatically collected, used, analyzed, and stored Plaintiff's and the Class's biometric identifiers without first obtaining the specific written release required by 740 ILCS 14/15(b)(3).

76. Amazon did not properly inform Plaintiff or the Class members in writing that their biometric identifiers or biometric information were being collected and stored, nor did it inform them in writing of the specific purpose and length of term for which their biometric identifiers or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

16

77. By collecting, storing, and using Plaintiff's and the Class members' biometric identifiers or biometric information as described herein, Amazon violated Plaintiff's and the Class members' rights to privacy in their biometric identifiers as set forth in BIPA, 740 ILCS 14/1, *et seq*.

78. On behalf of himself and the Class, Plaintiff seeks: (i) injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Amazon to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers or biometric information; (ii) statutory damages of $5,000.00 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000.00 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (iii) reasonable attorney's fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**SECOND CLAIM FOR RELIEF**
**Violation of 740 ILCS 14/15(a)**
**(On Behalf of Plaintiff and the Class)**

79. Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

80. Section 15(a) of BIPA requires that any "private entity in possession of biometric identifiers . . . must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers . . . when the initial purpose for collecting or obtaining such identifiers . . . has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

81. Amazon does not publicly provide a retention schedule or guidelines for permanently destroying their biometric identifiers or biometric information as specified by BIPA. *See* 740 ICLS 14/15(a).

82. Amazon did not adequately disclose to Plaintiff and Class members that it would

collect, store, and use their voiceprints.

83. Accordingly, on behalf of himself and the Class, Plaintiff seeks: (i) injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Amazon to establish and make publicly available a policy for the permanent destruction of biometric identifiers complaint with 740 ILCS 14/15(a); (ii) statutory damages of $5,000.00 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000.00 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**THIRD CLAIM FOR RELIEF**
**Violation of 740 ILCS 14/15(c)**
**(On Behalf of Plaintiff and the Class)**

84. Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

85. BIPA states that no private entity "in possession of a biometric identifier or biometric information or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

86. Amazon, as revealed through their patents, utilizes voice data to make targeted advertisements and otherwise disclose "keyword data associated with [the] user" Amazon states that "[t]he identified keywords can be stored and/or transmitted to an appropriate location accessible to entities such as advertisers or content providers who can use the keywords to attempt to select or customize content that is likely relevant to the user." U.S. Patent No. 10,373,620; U.S. Patent No. 10,692,506.

87. Upon information and belief, Amazon likely sells, leases, trades, or otherwise profits from the voice data and "keyword identifiers" that it makes available to third party "advertisers" and/or "content providers," which violates 740 ILCS 14/15(c).

88. Accordingly, on behalf of himself and the Class, Plaintiff seeks: (i) injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Amazon to establish and make publicly available a policy for the permanent destruction of biometric identifiers complaint with 740 ILCS 14/15(a); (ii) statutory damages of $5,000.00 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000.00 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class, respectfully requests that the Court enter an order:

A. Certifying this case as a Class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as the Class counsel;

B. Declaring that Amazon's conduct, as set out above, violates the state statutes cited herein;

C. Ordering Amazon to delete all voiceprints of Class members, and to implement procedures to require consent before recording or storing biometric data;

D. Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

E. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F. Awarding Plaintiff and the Class pre-and post-judgment interest, to the extent allowable;

G. Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

H. Awarding such other and further relief as the Court deems reasonable and just.

Dated: November 9, 2021

/s/ *Anthony F. Fata*
Anthony F. Fata
Cafferty Clobes Meriwether & Sprengel LLP
135 S. Wacker, Suite 3210
Chicago, IL 60603
(312) 782-4880
afata@caffertyclobes.com

Christian Levis (*pro hac vice forthcoming*)
Margaret MacLean (*pro hac vice forthcoming*)
Amanda Fiorilla (*pro hac vice forthcoming*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone:   (914) 997-0500
Facsimile:    (914) 997-0035
clevis@lowey.com
mmaclean@lowey.com
afiorilla@lowey.com

*Attorneys for Plaintiff and the Proposed Class*